**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

DARRYL SCOTT STINSKI,

               Petitioner,

    v.

WARDEN BENJAMIN FORD,[1]

           Respondent.

CIVIL ACTION NO.: 4:18-cv-66

**O R D E R**

In 2007, following a trial in the Superior Court of Chatham County, a jury convicted Petitioner Darryl Stinski of two counts of malice murder, two counts of felony murder, and other related crimes for the murders of Susan Pittman and her thirteen-year-old daughter, Kimberly Pittman. (Doc. 7-11, pp. 34–37.) Petitioner was sentenced to death on June 13, 2007. (Doc. 8-1, pp. 210–15.) After the completion of his direct appeal and state habeas corpus proceedings, Petitioner filed his Petition for Writ of Habeas Corpus in this Court, pursuant to 28 U.S.C. § 2254, challenging his conviction and death sentence. (Doc. 1.) Presently before the Court are the parties' briefs on procedural default, cause and prejudice, and the fundamental miscarriage of justice. (Docs. 57, 58, 59.) After a careful review of the parties' briefs and the record, the Court **DIRECTS**

---

[1] Petitioner originally named Eric Sellers as Respondent. (Doc. 1.) However, effective October 1, 2018, Benjamin Ford replaced Eric Sellers as Warden of the Georgia Diagnostic and Classification Prison. (Doc. 58, p. 1 n.1.) The proper Respondent is the state officer who has custody of Petitioner. See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. When a public officer ceases to hold public office while an action is pending, the officer's successor is automatically substituted as a party, and later proceedings should be in the substituted party's name. Fed. R. Civ. P. 25(d). Thus, the Court **AUTHORIZES** and **DIRECTS** the Clerk of Court to **TERMINATE** Eric Sellers as Respondent and **SUBSTITUTE** Benjamin Ford, in his official capacity as Warden of the Georgia Diagnostic and Classification Prison.

Petitioner that he may brief, in accordance with the Scheduling Order: (1) the entirety of his claim

that he received ineffective assistance of counsel during the sentencing phase of his trial (Claim

I); and (2) his claim that his execution would constitute cruel and unusual punishment in violation

of the Eighth and Fourteenth Amendments (Claim III).  The Court further **DIRECTS** Petitioner

that he is not permitted to brief his claim that he received ineffective assistance of counsel during

the guilt phase of his trial (Claim II).

## BACKGROUND

### I.    Factual Background

The Supreme Court of Georgia set forth the facts of this case as follows:

> Darryl Stinski and Dorian O'Kelley engaged in a crime spree that spanned April
> 10–12, 2002.  On the night of April 10, two police officers observed two men
> dressed in black clothing in a convenience store.  Later, the officers responded to
> two separate calls regarding the sounding of a burglar alarm at a nearby home and
> the officers returned to the store after responding to each call.  Then, at
> approximately 5:00 a.m. on April 11, the officers noticed while leaving the store
> that "the sky was lit up."  The officers discovered the victims' house fully engulfed
> in flames.  As one of the officers moved the patrol vehicle to block traffic in
> preparation for the arrival of emergency vehicles, his headlights illuminated a
> wooded area where he observed the same two men that he and his partner had
> observed earlier in the convenience store.  O'Kelley, as the neighbor living across
> the street from the burned house, gave an interview to a local television station.
> The officer saw the interview on television and identified O'Kelley as being one of
> the men he had seen in the convenience store and near the fire.  The officer later
> identified both Stinski and O'Kelley in court.
>
> Stinski and O'Kelley left items they had stolen with friends who lived nearby.  The
> friends handed those items over to the police.  Testimony showed that, before their
> arrest, O'Kelley had bragged about raping a girl and keeping one of her teeth as a
> memento and Stinski had laughed when he saw O'Kelley being interviewed on the
> news in front of the victims' house.
>
> Stinski gave two videotaped interviews with investigators after his arrest, the
> second of which was suppressed on his motion.  In the interview the jury heard,
> Stinski confessed to participating in the crime spree described below, which began
> with burglarizing a home and leaving when a motion detector in this first home set
> off an alarm.  After their botched burglary of the first home, Stinski and O'Kelley
> turned off the electricity to the home of Susan Pittman and her 13–year–old

2

daughter, Kimberly Pittman, and entered as both victims slept.  O'Kelley took a walking cane and began beating Susan Pittman, while Stinski held a large flashlight.  Stinski beat Susan Pittman with the flashlight and then left the room to subdue Kimberly Pittman, who had awakened to her mother's screams.  O'Kelley then beat Susan Pittman with a lamp and kicked her.  At some point, Susan Pittman was also stabbed three to four times in the chest and abdomen.  Stinski took Kimberly Pittman upstairs so she would not continue to hear her mother's screams.  Susan Pittman eventually died from her attack.  Stinski and O'Kelley then brought Kimberly Pittman back downstairs, drank beverages, and discussed "tak[ing] care of" her.  Stinski took Kimberly Pittman back upstairs and bound and gagged her.  As Stinski rummaged through the house downstairs, O'Kelley raped Kimberly Pittman.  Stinski and O'Kelley then agreed that Stinski would begin beating Kimberly Pittman with a baseball bat when O'Kelley said a particular word.  On cue, Stinski hit Kimberly Pittman in the head with the bat as she knelt on the floor, bloody from the rape and with her hands bound.  O'Kelley then slit Kimberly Pittman's throat with a knife but she remained alive.  Stinski went downstairs and came back upstairs when O'Kelley called him.  Stinski then hit Kimberly Pittman in her knee with the bat as O'Kelley tried to suffocate her.  O'Kelley then took another knife and stabbed her in the torso and legs.  O'Kelley kicked her and threw objects at her head, but her groans indicated that she was still alive.  Stinski and O'Kelley then set fires throughout the house and went to O'Kelley's house across the street to watch the fire.  Kimberly Pittman died of smoke inhalation before the fire fully consumed the house.  Later, in the early morning hours of April 12, Stinski and O'Kelley broke into numerous vehicles in the neighborhood.

Stinski v. State, 691 S.E.2d 854, 862–63 (Ga. 2010).

## II.    Procedural History

A Chatham County grand jury indicted Petitioner on two counts of malice murder, two counts of burglary, two counts of arson in the first degree, five counts of entering an automobile, one count of cruelty to children in the first degree, and one count of possession of a controlled substance with intent to distribute.  (Doc. 6-1, pp. 50–54.)  Following a jury trial, the jury found Petitioner guilty on all counts and on two lesser-included counts of felony murder.  (Doc. 7-11, pp. 34–37.)

After the sentencing phase of Petitioner's trial, the jury recommended the death sentence for the murders of Susan and Kimberly Pittman, finding that nine aggravating circumstances across the two murders warranted such a sentence:

(1) Petitioner was "engaged in the commission of a burglary" when murdering Susan Pittman;

(2) the murder of Susan Pittman "was outrageously or wantonly vile, horrible, or inhuman in that it involved the depravity of mind of" Petitioner;

(3) the murder of Susan Pittman "was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim before death[;]"

(4) Petitioner was committing "another capital felony" while murdering Kimberly Pittman;

(5) Petitioner "was engaged in the commission of a burglary" when murdering Kimberly Pittman;

(6) Petitioner "was engaged in the commission of arson in the first degree" when murdering Kimberly Pittman;

(7) the murder of Kimberly Pittman "was outrageously or wantonly vile, horrible, or inhuman in that it involved tortur[ing] . . . the victim before death[;]"

(8) the murder of Kimberly Pittman "was outrageously or wantonly vile, horrible, or inhuman in that it involved the depravity of mind of" Petitioner; and

(9) the murder of Kimberly Pittman "was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim before death."

(Doc. 8-1, pp. 210–13.)  In addition to the death sentence, Petitioner was sentenced to a total of 140 years of confinement for his other crimes.  (Id. at pp. 214–15.)

Shortly after the trial's sentencing phase, Petitioner filed a motion for a new trial, which he subsequently amended.  (Id. at pp. 219–21, 235–49; doc. 8-6, pp. 2–273.)  After holding a hearing, the trial court denied Petitioner's motion, (doc. 8-6, pp. 309–54), and Petitioner filed a notice of appeal, (doc. 7-1, pp. 28–36).  The Georgia Supreme Court affirmed Petitioner's death sentences

for the murders.  Stinski, 691 S.E.2d at 862.  Petitioner then moved for reconsideration of the decision, (doc. 11-4, pp. 1–50), which the Georgia Supreme Court denied, (doc. 11-6).  Petitioner filed a petition for writ of certiorari in the United States Supreme Court, (doc. 11-11), which the Supreme Court denied, (doc. 11-15).

Petitioner subsequently filed a petition for writ of habeas corpus in the Superior Court of Butts County, (doc. 11-19), and later amended the petition, (doc. 12-24).  After conducting an evidentiary hearing, the Superior Court denied the petition on January 15, 2017.  (Doc. 27-20.) Petitioner then filed an Application for Certificate of Probable Cause to Appeal ("CPC Application") in the Georgia Supreme Court, (doc. 27-22), which the Georgia Supreme Court denied, (doc. 27-24).

On March 26, 2018, Petitioner filed his Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  In accordance with the Court's Scheduling Order, (doc. 37), Petitioner filed his brief regarding the issues of procedural default, cause and prejudice, and the fundamental miscarriage of justice, (doc. 57).  Respondent then filed his Response, (doc. 58), to which Petitioner filed a Reply, (doc. 59).

## STANDARD OF REVIEW

"The procedural default rule bars a federal court from reaching the merits of a claim on collateral review when the habeas petitioner failed to follow a state's procedural rules while presenting his federal claim in state court."  Hammonds v. Allen, 849 F. Supp. 2d 1262, 1280 (M.D. Ala. 2012) (citing Wainwright v. Sykes, 433 U.S. 72, 82 (1977)).  Procedural default arises in two circumstances to bar a petitioner's claims.  Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  First, when a state court rejects a federal constitutional claim on procedural grounds and the ruling rests on an "independent and adequate" state ground, the claim is procedurally

defaulted.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing Coleman v. Thompson,

501 U.S. 722, 729–30 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989)).  To determine if a state

court's procedural ruling rests on an independent and adequate state ground, the United States

Court of Appeals for the Eleventh Circuit uses a three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly
> state that it is relying on state procedural rules to resolve the federal claim without
> reaching the merits of the claim.  Second, the state court's decision must rest
> entirely on state law grounds and not be intertwined with an interpretation of federal
> law.  Third, the state procedural rule must be adequate, i.e., firmly established and
> regularly followed and not applied in an arbitrary or unprecedented fashion.

Ward v. Hall, 592 F.3d 1144, 1156–57 (11th Cir. 2010) (citations and internal quotations omitted).

Second, claims are procedurally defaulted when a petitioner fails to exhaust his claims in

state court and any future attempt at exhaustion is futile.  See 28 U.S.C. § 2254(b)(1)(A) ("An

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court shall not be granted unless it appears that the applicant has exhausted the remedies

available in the courts of the State . . . .").  A petitioner has not exhausted his state remedies "if he

has the right under the law of the State to raise, by any available procedure, the question presented."

28 U.S.C. § 2254(c).  To exhaust state remedies, a state prisoner must "'fairly presen[t]' federal

claims to the state courts in order to give the State the '"opportunity to pass upon and correct"

alleged violations of its prisoners' federal rights.'"  Duncan v. Henry, 513 U.S. 364, 365 (1995)

(citing Picard v. Connor, 404 U.S. 270, 275 (1971)); see also O'Sullivan v. Boerckel, 526 U.S.

838, 848 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also

whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims

to the state courts.").  To fairly present his claims, "the petitioner must make the state court aware

that the claims asserted present federal constitutional issues."  Snowden v. Singletary, 135 F.3d

732, 735 (11th Cir. 1998).  "It is not enough that all the facts necessary to support the federal claim

were before the state courts or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted).  Instead, the petitioner must describe the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claims.  Id.

While a federal district court usually may dismiss a petition without prejudice so that the petitioner may exhaust his claims in state court, such dismissal is not necessary when a state procedural rule bars the petitioner from raising the unexhausted claims in state court.  Snowden, 135 F.3d at 736.  In such a situation, the claim is procedurally defaulted, and the federal court cannot review the merits of the claim.  Id.; Hittson v. GDCP Warden, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile—because the petitioner's claims would clearly be barred by state procedural rules—a federal court can . . . treat unexhausted claims as procedurally defaulted.").

Even if a claim is procedurally defaulted, a petitioner may overcome the procedural default rule by demonstrating either: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) the court's failure to review the claims will result in a fundamental miscarriage of justice.  Lucas v. Warden, Ga. Diagnostic & Classification Prison, 771 F.3d 785, 801 (11th Cir. 2014).  To establish cause, a petitioner must show that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Rivera v. Sec'y, Dep't of Corr., 737 F. App'x 946, 954 (11th Cir. 2018) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  To show prejudice, a petitioner must demonstrate with "reasonable probability that the result of the proceeding would have been different." Id. (citing Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003)).

**DISCUSSION**

Petitioner brings three general claims.  (Doc. 1.)  First, he asserts that his trial counsel rendered ineffective assistance of counsel at the sentencing phase of his trial in violation of his Sixth and Fourteenth Amendment rights (Claim I).  (<u>Id.</u> at pp. 7–57.)  Next, he argues that his trial counsel rendered ineffective assistance of counsel at the guilt phase of his trial in violation of his Sixth and Fourteenth Amendment rights (Claim II).  (<u>Id.</u> at pp. 57–60.)  Finally, Petitioner claims that his execution would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments (Claim III).  (<u>Id.</u> at pp. 61–65.)  In his Response, Respondent asserts that the Court cannot reach the merits of a portion of Claim I and all of Claim II because the claims are unexhausted and procedurally defaulted.[2]  (Doc. 29, pp. 10–12.)  Respondent further contends that the Court should dismiss Claim III as non-cognizable.  (<u>Id.</u> at pp. 12–13.)  The Court will address each of Petitioner's claims in turn.

**I.      Claim I: Ineffective Assistance of Counsel at the Sentencing Phase of Trial**

Within Claim I, Petitioner alleges a variety of errors during his trial's sentencing phase that he believes entitles him to habeas relief.  (Doc. 1, pp. 7–57.)  Specifically, Petitioner argues that his trial counsel's deficient performance at the sentencing phase individually and cumulatively prejudiced him because, among other things, his trial counsel failed to prepare the mitigation witnesses they called, which resulted in "disjointed and unpersuasive" testimony.  (<u>Id.</u> at pp. 50–52.)  In his Response, Respondent asserts that this portion of Claim I is procedurally defaulted because Petitioner failed to exhaust his state remedies pertaining to that sub-claim.  (Doc. 29, p. 12.)  However, after a "closer reading" of Petitioner's federal habeas petition, state court briefs,

---

[2]  Respondent recognizes that the exhausted portions of Claim I are properly reviewable before this Court under 28 U.S.C. § 2254(d) but denies that any of Petitioner's constitutional rights were violated.  (Doc. 29, pp. 14–15.)

and CPC Application, Respondent concedes that Petitioner properly exhausted the entirety of Claim I.  (Doc. 58, p. 5.)   The Court's own review of the record also shows that Petitioner exhausted the entirety of Claim I.  (Doc. 12-24, pp. 15–17; doc. 27-8, pp. 71–75; doc. 27-22, p. 12.)  Therefore, Claim I is not procedurally defaulted.  See, e.g., Vazquez v. Sec'y, Fla. Dep't of Corr., 827 F.3d 964, 966 (11th Cir. 2016) ("'[S]tates can waive procedural bar defenses in federal habeas proceedings,' including exhaustion.") (citing Hills v. Washington, 441 F.3d 1374, 1376 (11th Cir. 2006)).  Accordingly, the Court **DIRECTS** Petitioner that he may brief the entirety of Claim I in his upcoming merits brief.

**II.      Claim II: Ineffective Assistance of Counsel at the Guilt Phase of Trial**

> **A.      Claim II is unexhausted because Petitioner failed to raise Claim II in his CPC Application to the Georgia Supreme Court**

Respondent contends that Claim II is procedurally defaulted because Petitioner failed to properly raise Claim II in the underlying state court proceedings.   (Doc. 29, pp. 10–12.) Specifically, Respondent asserts that Petitioner failed to exhaust Claim II because Petitioner did not raise the claim in his CPC Application filed with the Georgia Supreme Court.  (Id.; doc. 58, p. 5.)  Petitioner argues that due to the Georgia Supreme Court's 30-page limit on CPC applications, he only had the space to incorporate the claim through a footnote in his CPC Application.[3]  (Doc. 57, p. 7.)  Petitioner further points out that he raised the claim in his state habeas petition and post-hearing briefs and argues that the Georgia Supreme Court's "thorough review" of the CPC Application and the record in the state court proceedings saves Claim II from procedural default. (Id. at p. 8.)

---

[3]  The relevant footnote states, "Mr. Stinski does not abandon any of the claims he has previously raised. Due to space constraints, many of those issues are not fully discussed below.  But Mr. Stinski incorporates by reference all claims raised in his Petition, his Amended Petition, and the motions, pleadings, and evidentiary hearing in the habeas court."  (Doc. 27-22, p. 7 n.2.)

The Court concludes that Petitioner did not exhaust Claim II because he failed to raise the claim in his CPC Application.  In Georgia, for a petitioner to exhaust his state remedies, the petitioner must petition the Georgia Supreme Court for a certificate of probable cause.  See Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (per curiam) ("[The petitioner's] failure to petition the Georgia Supreme Court for a certificate of probable cause means that [the petitioner] failed to exhaust all of his available state remedies."); Hittson v. GDCP Warden, 759 F.3d 1210, 1232 n.23 (11th Cir. 2014) ("Because Georgia prisoners are required to apply for a CPC before they have exhausted their state remedies, . . . claims not in [the petitioner's] CPC application are unexhausted.") (citation omitted).

Here, while Petitioner filed his CPC Application with the Georgia Supreme Court, the Court's review of the CPC Application reveals that Petitioner failed to raise Claim II within it. (See doc. 27-22.)  Because Petitioner did not raise Claim II in his CPC Application, Claim II is unexhausted.  See O'Kelley v. Warden, GDCP, No. 4:15-cv-104, 2019 WL 1452514, at *6 (S.D. Ga. Apr. 2, 2019) ("In this Court's view, Petitioner was plainly required to detail all of his claims in his CPC application in order to properly exhaust his claims.").

The Court also finds Petitioner's incorporation argument unpersuasive.  The United States Supreme Court has held that:

> ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

Baldwin v. Reese, 541 U.S. 27, 32 (2004).  While Baldwin did not involve a situation in which a petitioner attempted to "incorporate" arguments through a footnote in a state court filing, Baldwin makes clear that when a petitioner's filing to a state supreme court does not fairly present a claim on its own, the fact that the claim was raised in the lower state court does not satisfy the exhaustion

requirement.  See id. at 31–32.  Furthermore, Petitioner's case raises the same policy concerns that

the Supreme Court faced in Baldwin.   Id.   Allowing petitioners to satisfy the exhaustion

requirement by simply incorporating their trial court pleadings in a footnote within their CPC

applications or other appellate filings would render the procedural default rule meaningless.

Moreover, allowing such "incorporation tactics" would require state appellate courts such as the

Georgia Supreme Court to analyze every pleading, motion, and order from the lower court for any

possible federal constitutional claim.  Requiring state courts to perform such a review would

increase their workload, alter the ordinary review practice, and frustrate the purpose of requiring

a CPC application.

When faced with a nearly identical footnote in O'Kelley, the district court rejected the

petitioner's argument that the footnote in his CPC application incorporated his claims by reference.

O'Kelley, 2019 WL 1452514, at *8.  The district court concluded:

> A reviewing court is unable to fully assess claims that have simply been
> incorporated by reference. . . . In this Court's view, Petitioner's footnote is an
> improper attempt to preserve claims without allowing the underlying state court a
> full and fair opportunity to review the merits of his claims.  Accordingly, this Court
> finds that Petitioner's attempt to incorporate his claims by reference is insufficient.

Id.  Petitioner also fails to provide any legal support for his argument that incorporating claims by

reference in a footnote within a CPC application satisfies the exhaustion requirement.  Considering

the purpose of the exhaustion requirement, the reasoning in O'Kelley, and the Supreme Court's

guidance in Baldwin, the Court concludes that Petitioner failed to satisfy the exhaustion

requirement by attempting to incorporate his claims by reference through a footnote in his CPC

Application.

The Court similarly rejects Petitioner's "thorough review" argument.  Relying on Wilson

v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016), *rev'd on other grounds by*

<u>Wilson v. Sellers</u>, -- U.S. --, 138 S. Ct. 1188 (2018), Petitioner asserts that the Georgia Supreme Court thoroughly reviews the evidence, arguments, complete record, and transcripts before denying a CPC application.  (Doc. 57, pp. 6, 8.)  According to Petitioner, because the Georgia Supreme Court relies on the lower court record when denying CPC applications, the Georgia Supreme Court actually did review all of his claims raised in the lower state court proceedings. (<u>Id.</u>)

The district court in <u>O'Kelley</u> also addressed this argument and found it unpersuasive. <u>O'Kelley</u>, 2019 WL 1452514, at *7.  In that case, the district court determined that the petitioner's argument that the Georgia Supreme Court reviewed all of his claims even though those claims were not expressly raised in the CPC application was "based on a flawed understanding of the opinions" in <u>Redmon v. Johnson</u>, 809 S.E.2d 468, 469–70 (Ga. 2018), and <u>Wilson</u>, 834 F.3d at 1233.[4]  <u>Id.</u>  The district court stated:

> Contrary to Petitioner's assertions, neither the <u>Redmon</u> Court nor the <u>Wilson</u> Court ever states that the Georgia Supreme Court considers potential arguments that a petitioner fails to raise in a CPC application.  In fact, in this Court's view, both opinions undermine Petitioner's position.  First, the <u>Wilson</u> Court provided that "the Georgia Supreme Court thoroughly reviews the evidence and <u>the petitioner's arguments</u> before denying an application for a certificate of probable cause." Moreover, in <u>Redmon</u>, the court expressly provided that staff attorneys are assigned to draft legal memoranda for each case to address "the arguments <u>presented in the application</u>, and the factual and legal merits of each argument."  While both opinions provide that the Georgia Supreme Court has access to the entire habeas record, both opinions also clarify that the Georgia Supreme Court does not conduct a review of every theoretical argument that could have been raised in a CPC application.  Rather, both opinions suggest that the Georgia Supreme Court bases its consideration of a petitioner's CPC application on the arguments raised in the application.

<u>Id.</u> (citations omitted).  The district court continued on to say that "[the p]etitioner's argument is . . . illogical" because "[w]ith limited resources, it is unlikely that the Georgia Supreme Court would

---

[4]  In <u>Redmon</u>, 808 S.E.2d 468, and <u>Wilson</u>, 834 F.3d 1227, the Georgia Supreme Court and the Eleventh Circuit, respectively, explained the Georgia Supreme Court's process for reviewing CPC applications.

peruse the entire habeas record in search of claims that a petitioner did not feel were worthy of inclusion in his CPC application." Id.

Furthermore, Petitioner did not provide, nor can the Court find, any support for the assertion that the Georgia Supreme Court reviewed Petitioner's claims that were not raised in his CPC Application. For the above reasons, the Court finds Petitioner's thorough review argument unavailing. Therefore, Petitioner failed to exhaust Claim II.

**B.     Claim II is procedurally defaulted because any future attempt by Petitioner to exhaust Claim II is futile**

When a federal district court is faced with a "mixed habeas petition" (one which contains both exhausted and unexhausted claims), the district court usually must dismiss the claims without prejudice so that the petitioner may either exhaust his claims in state court or resubmit his petition to present only exhausted claims. Snowden, 135 F.3d at 736. However, "[w]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong'" and treat the unexhausted claims as procedurally defaulted. Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007) (quoting Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1351 (11th Cir. 2004) (alteration in original)).

Here, the Court concludes that Claim II is procedurally defaulted because any future attempt by Petitioner to exhaust Claim II would be futile. As discussed above, Petitioner failed to properly raise Claim II in his CPC Application. Any future attempt by Petitioner to raise Claim II would be barred from the state court's review under O.C.G.A. § 9-14-52. Section 9-14-52(b) requires an unsuccessful habeas petitioner to file a CPC application with the Georgia Supreme Court no later than thirty days from the date the state habeas court denied relief. O.C.G.A. § 9-14-52(b). The Butts County Superior Court denied Petitioner relief on January 15, 2017, (doc. 27-20), so Petitioner is now well beyond his 30-day window to file a CPC application with Claim II.

Therefore, any future attempt by Petitioner to raise Claim II before the Georgia Supreme Court would be futile.  See Fullwood v. Sivley, 517 S.E.2d 511, 513–14 (Ga. 1999) (ruling that the Georgia Supreme Court must apply the jurisdictional and procedural requirements of O.C.G.A. § 9-14-52(b)); Daniel v. Warden, 783 F. App'x 1007, 1008 (11th Cir. 2019) (holding that a Georgia habeas petitioner who filed an untimely CPC application with the Georgia Supreme Court procedurally defaulted his claims); O'Kelley, 2019 WL 1452514, at *7 ("Because [p]etitioner is well outside of this 30-day period and has already filed a CPC application, dismissing [p]etitioner's claims in order to allow [p]etitioner to raise those claims in a subsequent CPC application would be futile.").  Accordingly, because O.C.G.A. § 9-14-52(b) bars any future attempt by Petitioner to exhaust Claim II, the Court finds that Claim II is procedurally defaulted.

### C.   Petitioner failed to show proper cause to excuse the procedural default of Claim II

Because Claim II is procedurally defaulted, the only way for the Court to review its merits is for Petitioner to show either: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) the Court's failure to review Claim II will result in a fundamental miscarriage of justice.  Lucas, 771 F.3d at 801.  To establish cause, Petitioner must show that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Rivera, 737 F. App'x at 954 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

Petitioner argues that the Georgia Supreme Court's 30-page limit on CPC applications made "[i]t impossible . . . to fully brief all of his claims."  (Doc. 57, p. 7.)  According to Petitioner, the Court "should not punish [him] for adhering to the space constraints imposed on him."  (Id. at p. 8.)  Respondent argues that the page limit is not enough to show cause to overcome the procedural default of Claim II.  (Doc. 58, pp. 14–15.)  According to Respondent, "[t]he fault lies

not with the state court's page limitation rule but with [Petitioner's] failure to take any step to work within the state court's rules."  (Id.)

The Court concludes that the Georgia Supreme Court's 30-page limit on CPC applications does not excuse the procedural default of Claim II.  While the page limit may have limited the manner in which Petitioner could present his arguments, the page limit did not necessarily prevent him from raising any arguments.  See Weeks v. Angelone, 176 F.3d 249, 271 (4th Cir. 1999) (state supreme court's 50-page limit on briefs "merely limited the manner in which [the petitioner] could present his arguments [and] did not wholly prevent him from presenting them"); Trujillo v. Ploughe, 475 F. App'x 261, 266–67 (10th Cir. 2012) (Colorado's 30-page limit on appellate briefs was not "cause" for a habeas petitioner's procedural default of a claim).  Petitioner, who is represented by counsel, made a strategic choice to focus on certain claims in his CPC Application and exclude others.  See Weeks, 176 F.3d at 272 ("While the [50-page limit] may have led [the petitioner's] counsel to make certain strategic choices as to which arguments to include and which to omit, the page limitation is reasonable."); Hazlip v. Davis, No. H-16-0607, 2017 WL 4280727, at *4 (S.D. Tex. Sept. 27, 2017) ("The reason for [the petitioner's] failure to exhaust was not the page limit, but rather his strategic choices of the claims to focus on.").

Furthermore, Petitioner does not allege, and the record does not indicate, that Petitioner requested a page extension for the CPC Application from the Georgia Supreme Court.  See Ga. Supreme Ct. R. 20.  If the 30-page limit truly rendered it impossible for Petitioner to raise all his claims, then Petitioner could have requested such an extension.  See Charley v. Estes, No. 4:12–CV–1069–VEH–JEO, 2015 WL 2354258, at *25 (N.D. Ala. May 14, 2015) (noting that the petitioner's failure to request a page extension supported the court's rejection of the petitioner's argument that the Alabama Supreme Court's 15-page limit excused procedural default.)  Thus, the

15

Court concludes that under Petitioner's circumstances, the Georgia Supreme Court's 30-page limitation does not constitute cause to excuse the procedural default of Claim II.

Because the Court concludes that Petitioner failed to show cause for the procedural default of Claim II, the Court declines to rule on whether Petitioner showed prejudice.  See, e.g., Ward, 592 F.3d at 1157 ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.").

Accordingly, the Court is precluded from reviewing Claim II on the merits. The Court **DIRECTS** Petitioner that he is not permitted to present and argue in his upcoming merits brief his claim that he received ineffective assistance of counsel during the guilt phase of his trial (Claim II).

### III.    Claim III: Cruel and Unusual Punishment

#### A.    Claim III is a cognizable claim

Under Claim III, Petitioner asserts that Roper v. Simmons, 543 U.S. 551 (2005), bars his execution as cruel and unusual punishment under the Eighth and Fourteenth Amendments because he was the functional equivalent of an adolescent when he committed the crimes.  (Doc. 1, p. 61.) Petitioner argues that because he "possessed all the characteristics that the Supreme Court held in *Roper v. Simmons*, 543 U.S. 551 (2005) prohibit the execution of adolescents," he should also be exempt from the death penalty.  (Doc. 57, pp. 10–11.)  Respondent argues that Claim III is not a cognizable claim before the Court because Petitioner was nineteen years old at the time of the crime.  (Doc. 58, p. 16.)  Therefore, Respondent asserts that Petitioner fails to present a "constitutional claim to be determined by this Court" because Petitioner does not allege that he was younger than eighteen years old when he committed the crimes.  (Id. at p. 17.)  The state

habeas court ruled that Claim III is not cognizable under O.C.G.A. § 9-14-42(a)[5] because the "allegation fails to allege a constitutional violation in the proceedings which resulted in Petitioner's conviction and sentence." (Doc. 27-20, p. 87.) The state court also made an alternative ruling that Claim III fails on the merits. (Id. at p. 88.)

The Court concludes that Claim III is cognizable and properly before the Court on the merits. Section 2254 relief is available for a petitioner "in custody pursuant to the judgment of a State court only on the ground" that his custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[H]abeas corpus law exists to provide a prisoner an avenue to attack the fact or duration of physical imprisonment and to obtain immediate or speedier release." McNabb v. Comm'r Ala. Dep't of Corr., 727 F.3d 1334, 1344 (11th Cir. 2013). "The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (quotations omitted).

Here, Petitioner is challenging his death sentence under federal law. In his state court pleadings, the post-hearing briefs, and the CPC Application, Petitioner raised Claim III while citing to a United States Supreme Court case, Roper, 543 U.S. 551 (2005), and the Eighth and Fourteenth Amendments of the United States Constitution. (Doc. 12-24, pp. 29–30; doc. 27-8, pp. 99–101; doc. 27-14, pp. 58–59; doc. 27-22, pp. 35–36.) Furthermore, in his Petition filed in this Court, Petitioner once again cited the Eighth and Fourteenth Amendments as well as Roper. (Doc. 1, p. 61.) To the extent Respondent argues that Roper is not applicable to the facts of Petitioner's claim, that argument goes to the merits of Petitioner's claim and not to whether the claim is

---

[5] O.C.G.A. § 9-14-42(a) provides that "[a]ny person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article [governing habeas petitions]."

cognizable in federal court.  Thus, there is no doubt that Petitioner is alleging that his death sentence violates "the Constitution or laws or treaties of the United States."

      **B.**      **Claim III is not procedurally defaulted**

Even though Respondent did not raise an exhaustion defense, the Court must also determine if Claim III is procedurally defaulted due to Petitioner's failure to exhaust his state remedies.  See Dill v. Holt, 371 F.3d 1301, 1302 n.1 ("Although respondents did not assert the exhaustion defense in the district court, . . . . the court was required to address and decide whether petitioner had exhausted his state remedies."); Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1339 (11th Cir. 2009) ("If the procedural bar defense arises from the petitioner's failure to raise the claim at all . . . [the exhaustion defense] cannot be waived implicitly by the State's failure to assert it.").

Here, Petitioner exhausted his federal claim that he is ineligible for the death penalty under the Eighth and Fourteenth Amendments.  Petitioner labeled the claim as a federal claim and identified the source of federal law in the state court proceedings, the state habeas petition, the post-hearing briefing, and the CPC Application.  (Doc. 12-24, pp. 29–30; doc. 27-8, pp. 99–101; doc. 27-14, pp. 58–59; doc. 27-22, pp. 35–36.)  Thus, Petitioner fairly presented his federal claim to the state courts to give the state courts an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  See Duncan, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275).  Because Petitioner fairly presented Claim III to the state courts, Claim III is not procedurally defaulted from lack of exhaustion.  Therefore, Claim III is properly before the Court on the merits.  Accordingly, the Court **DIRECTS** Petitioner that he may brief Claim III on the merits in his upcoming merits brief.

## CONCLUSION

For the foregoing reasons, the Court **DIRECTS** Petitioner that he may brief the entirety of Claim I and Claim III in his upcoming merits brief, in accordance with the Scheduling Order.  The Court further **DIRECTS** Petitioner that he is not permitted to brief Claim II in his upcoming merits brief.

**SO ORDERED**, this 5th day of January, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA