## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

---------------------------------------------------------------x

DARRYL SCOTT STINSKI,               :

                                    :

        Petitioner,               :

                                    :       Civil Action No. 4:18-cv-66

BENJAMIN FORD, Warden Georgia Diagnostic   :

and Classification Prison, and GREGORY C.       :      **THIS IS A CAPITAL CASE**

DOZIER, Commissioner Georgia Department of   :

Corrections,                               :

                                    :

        Respondents.           :

---------------------------------------------------------------x

## PETITIONER'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 59(e)

Richard K. Hines, V
Georgia Bar No. 356300
Lucas A. Westby
Georgia Bar No. 594008
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30603
Tel: 404.322.6272
Fax: 404.322.6050
richardhines@nelsonmullins.com
lucas.westby@nelsonmullins.com

Lori B. Leskin (*pro hac vice*)
Jeffrey A. Fuisz (*pro hac vice*)
Sheila S. Boston (*pro hac vice*)
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: 212.836.8000
Fax: 212.836.8589
lori.leskin@arnoldporter.com
jeffrey.fuisz@arnoldporter.com
sheila.boston@arnoldporter.com

*Attorneys for Petitioner Darryl Scott Stinski*

Petitioner Darryl Scott Stinski, pursuant to Federal Rule of Civil Procedure 59(e), respectfully urges this Court to alter or amend its Final Judgment, Doc. 73, based on the Court's Order entered on December 15, 2021, Doc. 72 ("Order"), denying habeas corpus relief. The Court also denied a certificate of appealability on each of Mr. Stinski's claims, although the parties did not brief that issue. Even if the Court otherwise denies relief, it should alter the judgment to grant Mr. Stinski a certificate of appealability under 28 U.S.C. § 2253(c) on each of his claims. In support of his motion, Mr. Stinski makes the following arguments.

## ARGUMENT

I. **THE COURT'S DENIAL OF MR. STINSKI'S CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE OF HIS CAPITAL TRIAL IS BASED ON MANIFEST ERRORS OF FACT AND LAW**

A. **The Court Overlooked the Critical Distinction Between Mr. Stinski's Social History and the Missing Explanation for His Criminal Conduct**

The Court's denial of Mr. Stinski's claim for ineffective assistance of counsel at the penalty phase ignores trial counsel's failure to connect the dots between the experts' testimony and Mr. Stinski's actions. In focusing on the similarities between the testimonies of Drs. Weilenman, Garbarino, Ash, and James, the Court incorrectly conflates Mr. Sparger's having presented expert testimony with his having effectively presented an argument to the jury, which he did not.

Trial counsel had evidence available to him with which to connect the dots at the sentencing phase, but he inexplicably failed to develop and present that evidence. As the state habeas court found, "Petitioner presented compelling scientific evidence which *could have* been presented at trial to demonstrate that Petitioner's impulsive behavior and susceptibility to the influence of [Dorian O'Kelley] was related to the lack of development of Petitioner's near adolescent brain," Doc. 27-20 at 4-5 (emphasis added), and, "It is true trial counsel did not present the type of scientific evidence" at the sentencing phase "to 'connect the dots' between Petitioner's conduct

and his adolescence." *Id*. at 5. This Court's order similarly recognized that Dr. Ash and Dr. Garbarino "provided *more detailed, scientific-based explanations* of the same conclusions that Dr. Weilenman reached" and that "the testimony [of Dr. James] was *more rooted in science and possibly more convincing* than Dr. Weilenman's testimony." Doc. 72 at 28, 30 (emphasis added). But because Dr. Weilenman testified to the same ultimate facts about Mr. Stinski's mental status as Drs. Garbarino, Ash, and James, the Court determined that the state habeas court did not err in finding that Mr. Sparger was not deficient for failing to provide testimony from the latter experts at sentencing.

This determination misses the crux of trial counsel's ineffectiveness at the sentencing stage. The Court's determination that Dr. Weilenman testified to the same facts as the other experts not only ignores that Drs. Garbarino, Ash, and James presented more detailed and science-based opinions, but also does not negate that it was critical for Mr. Sparger to present evidence to make clear to the jury why those facts explained Mr. Stinski's actions and inactions. "The importance of counsel's role in this regard cannot be overstated . . . . Counsel in capital cases must explain to the jury why a defendant may have acted as he did--must connect the dots between, on the one hand, a defendant's mental problems, life circumstances, and personal history and, on the other, his commission of the crime in question." *Hooks v. Workman,* 689 F.3d 1148, 1204 (10th Cir. 2012).

In *Workman*, the Tenth Circuit reversed the denial of habeas relief on ineffective assistance of counsel grounds because, among other reasons, counsel "made little effort to connect [the expert's] diagnosis to the circumstances of the crime." *Id*.; see also *Jefferson v. GDCP Warden*, 941 F.3d 452, 486 (11th Cir. 2019) (affirming habeas relief where "the jury was deprived of extensive evidence tending to show that [petitioner] suffers from brain damage that, significantly, made it difficult for him to control his behavior" and "experts expressly testified that [petitioner]

is less morally culpable for his actions precisely because he is less able to control himself than would an unimpaired individual" because that evidence "bears directly on [petitioner]'s moral culpability and appreciably weakens whatever reasons the jury had for imposing a death sentence"). Further, in *Lopez v. Att'y Gen.*, 845 F. App'x 549, 552-53 (9th Cir. 2021), the Ninth Circuit affirmed habeas relief where the state court failed to consider, in part, trial counsel's failure to connect for the jury the petitioner's actions to his difficult childhood. Similarly, Mr. Stinski's trial counsel failed to connect the dots between Mr. Stinski's mental state and his actions, and therefore deprived the jury of critical evidence about his moral culpability.

The Court relies on the wrong principle to deny Mr. Stinski's claim of ineffective assistance of counsel. The Court compares Mr. Stinski's case to those in which trial counsel did virtually nothing to prepare for the penalty phase of a capital trial. But, the Supreme Court has "never held that counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant." *Sears v. Upton*, 561 U.S. 945, 954, 955 (2010) (emphasis in original). And the Supreme Court has "found deficiency *and* prejudice in . . . cases in which counsel presented what could be described as a superficially reasonable mitigation theory during the penalty phase." *Id*. at 954 (citations omitted, emphasis in original). While this case differs from those in which trial counsel presented no mitigation evidence at the penalty phase, it is a manifest error to determine that this precludes a finding of ineffective assistance of counsel.

B.      **The Court's Conclusion that Mr. Stinski's Trial Counsel Acted Reasonably is Manifestly Incorrect**

The Court excused the failure of Mr. Stinski's trial counsel to retain appropriate expert assistance based on its conclusion that there is "contradictory evidence" as to whether Mr. Sparger discussed the need for it with other members of the defense team. Doc. 72 at 26. The Court's

conclusion belies both testimony and contemporaneous documentation of the defense team's discussions about Mr. Stinski's mental state and rests on manifest errors of fact.

Mr. Sparger recalled a meeting with Dale Davis and Dr. Jane Weilenman in which they discussed additional expert testing after Mr. Sparger learned he would be conducting the mitigation phase. Doc. 13-15 at 158:12–159:9. That he was unclear on the details of this meeting during his trial testimony years afterward does not contradict the evidence that his retained experts suggested having Mr. Stinski evaluated by a neuropsychologist. Contemporaneous emails between Ms. Davis and Mr. Sparger show their discussions about additional expert assistance. On December 3, 2004, Ms. Davis wrote to Mr. Sparger, "We probably need a specialist in [developmental issues] to explain the impulsiveness, lack of judgment, etc," and identified such a specialist who researched and testified about adolescent brain development. Doc. 19-9 at 38346. Mr. Sparger replied, "If [the Supreme Court does] set a specific number in *Simmons* [*Roper v. Simmons*, 543 U.S. 551 (2005)], we can use that along with *Adkins* [*Atkins v. Virginia*, 536 U.S. 304 (2002)] . . . to argue that someone who is mentally under the age of 18 should not be executed." Doc. 19-9 at 38346.

Ms. Davis testified that at a subsequent meeting in January 2005, she, Dr. Weilenman, Mr. Sparger, and his co-counsel, Mr. Schiavone, all agreed that Mr. Stinski "needed to have a neuropsychological exam" to assess the potential developmental issues and how those issues relate to "Darryl's background" and that the defense team "need[ed] to have someone testify to bring all of these things in and to show the impact, not just the factual information that we had developed, but what it means and how it impacts somebody." Doc. 13-19 at 835:7–837:5. The team identified a potential expert neuropsychologist, and Dr. Weilenman planned to contact him. *Id*. at 835:7–20. Dr. Weilenman's contemporaneous notes corroborate this discussion of the need to retain additional experts to connect Mr. Stinski's brain development to his actions. Her notes list several

experts in the field of adolescent crime along with examples of their scholarship. *See* Doc. 23-21 at 70747. The email exchange between Mr. Sparger and Ms. Davis, Ms. Davis's testimony of the defense team's meeting, and Dr. Weilenman's contemporaneous notes set out a plan to engage at least one additional expert who would tie together the facts of Mr. Stinski's background, mental state, and behavior.

Mr. Sparger's and Mr. Schiavone's inability to recall the plan years later does not contradict the defense team's documented strategy to seek additional expert assistance. Mr. Sparger testified that he "wished [he] had known" about Dr. Weilenman's notes because "this is the type [of] thing [he] would need to find out[;] was there someone who could present [the information]." Doc. 13-16 at 304:22–305:9. But rather than seek the answer to that critical question, neither Mr. Sparger nor Mr. Schiavone communicated with Ms. Davis or Dr. Weilenman for two years, until just before Mr. Stinski's trial. Mr. Sparger therefore never received a reminder of his stated plan to seek additional experts and to connect his client's mental development with his actions. He discarded the strategy out of a "failure to investigate thoroughly [that stemmed] from inattention, not strategic judgment." *Jefferson*, 941 F.3d at 481 (quoting *Wiggins v. Smith*, 539 U.S. 510, 526 U.S. (2003)). Therefore, his "failure . . . to arrange for neuropsychological testing resulted in the exact kind of non-strategic decision that underscores the unreasonableness of [his] conduct." *Jefferson*, 941 F.3d at 481 (citation omitted); *see also Lopez*, 845 F. App'x at 552 ("Because counsel's mitigation strategy was to attribute [the defendant's] conduct to his difficult upbringing and resulting psychological state and to ask the jury to give him hope for the possibility of parole, his failure to introduce readily available expert evidence opining that he could be capable of rehabilitation and drawing the key causal connections he asked the jury to find was not a reasonable strategic decision.").

Mr. Sparger, the least qualified member of the defense team assigned to the most important task, see Doc. 65 at 65–66, admitted that failing to provide the jury with an explanation was devastating to the prospects for obtaining a life verdict for his client: "During this, [we were] trying to show a much less culpable state and then . . . try to be able to explain how someone could, you know, still get caught up, participate in something like that, and try to explain to the jury what happened, why Darryl didn't just walk away. And that was the part we had a problem with. We could show his history, but never got it all to come together." Doc. 13-15 at 171:6-17. Mr. Sparger admitted that the brain development mitigation evidence "was what our case was missing" because, although "we put it out there about the lesser culpability, . . . the jury never had the reason why, how could that be, you know, an explanation. And this probably would [have provided an explanation]." Doc. 13-16 at 305:11-306:3. Mr. Sparger's own testimony shows the diffidence with which he approached the mitigation phase of his client's case, and that his failure to connect the dots was born out of a failure to follow up and present the type of compelling scientific testimony that Mr. Stinski presented in the state habeas court to have the evidence "all come together" rather than out of any strategic acumen. The Court manifestly erred in determining that Mr. Sparger's deficient memory constitutes "contradictory evidence" and that his failure to seek additional expert assistance, stemming from his inattentiveness, constituted effective assistance to Mr. Stinski.

### C.    The Court's Prejudice Determination is Based on Manifest Errors of Fact and Law

Not only did Mr. Sparger act deficiently, but his deficiencies prejudiced Mr. Stinski. First, the Court concludes that the evidence against Mr. Stinski "was so strong that it is hard to imagine that any amount of mitigating evidence could have outweighed it." Doc. 72 at 33–34. However, that conclusion is contrary to established federal law that treating highly aggravated cases as

incapable of producing any sentence other than death would unreasonably discount the mitigation evidence presented at the postconviction proceedings. *Porter v. McCollum*, 558 U.S. 30, 42-43 (2009) (holding state court decision unreasonable where it "either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction proceeding"); Doc. 65 at 129–33. Even in the face of outrageously or wantonly vile, horrible, inhuman, or depraved conduct, and "in cases involving particularly heinous murders, a defendant can be prejudiced by an attorney's failure to investigate and present mitigating evidence." *Lambright v. Schriro*, 490 F.3d 1103, 1127 (9th Cir. 2007) ("[T]he presentation of mitigating evidence is vital even where . . . the aggravating evidence is powerful."); *see, e.g.*, *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1356 (11th Cir. 2011) (prejudice where trial counsel failed to investigate and introduce mitigating evidence that multiple murders "were committed when [the petitioner was 18 years old, [and] under the substantial domination of [a co-defendant]").[1]

Here, Mr. Stinski is entitled to an individualized sentencing determination based on what *he* did and *his* character, which requires a presentation of neuropsychological assessments not presented at the sentencing hearing. To rule out consideration of such assessments in its prejudice determination, on the grounds that Mr. Stinski's case is highly aggravated, would be a manifest error of law and fact. *See Porter*, 558 U.S. at 42–43; *Walbey v. Quarterman*, 309 F. App'x 795, 804 (5th Cir. 2007) ("[I]f [extremely egregious, heinous and shocking facts] were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief . . . would virtually never be available, so testing for it would amount to a hollow judicial act.") (citation omitted)); *cf. Romine v. Head*, 253 F.3d 1349, 1367-68 (11th Cir. 2001) ("Georgia's [death

---

[1] Moreover, the conduct the Court cites as "highly aggravating" mainly relates to actions taken by Dorian O'Kelley. *See Stinski v. State*, 691 S.E.2d at 862-63.

penalty] statute . . . permits the jury in its unbridled discretion to impose a life sentence regardless of the number or strength of aggravating circumstances.").

Second, though the Court describes the testimony of Drs. James, Ash, and Garbarino as cumulative and duplicative, it remains that the state court found their testimony constituted "compelling scientific evidence," Doc. 27-20 at 4–5, and this Court's statements do not controvert that finding.[2] That the Court thought their testimony was "*possibly* more convincing than Dr. Weilenman's testimony" should cast doubt on the determination that their testimony is cumulative. *Id.* Indeed, the Supreme Court has rejected the argument that defendants cannot be prejudiced by their counsel's "use of [a less qualified expert] rather than a more qualified expert" simply because the two experts reach the same conclusion. *Hinton v. Alabama*, 571 U.S. 263, 275-76 (2014). The prejudice inquiry requires consideration of "the totality of the evidence evidence—'both that adduced at trial, and the evidence adduced in habeas proceeding[s]," *Wiggins*, 539 U.S. at 536 (citation omitted), and the "compelling scientific evidence" presented in this case is no exception. Under clearly established federal law, a finding of prejudice is not foreclosed merely because some evidence submitted at Mr. Stinksi's postconviction proceeding concerned the same subject matter as evidence submitted at his trial. *Id.*; Doc. 65 at 115–16. Yet that is what the Court has done here. In concluding that the testimony of Drs. James, Ash, and Garbarino is cumulative, the Court explains that Dr. Weilenman also interviewed Mr. Stinski to reach her opinion, and that Dr. Weilenman had the "same conclusion." Doc. 72 at 28, 30. But as the Eleventh Circuit has noted, "[a]ll things considered, the ***quality of the mitigation evidence is important***." *Maples v. Comm'r,*

---

[2] As the Court stated, Dr. James conducted a neuropsychological examination and "explained how those deficits in executive functioning contributed to his actions the night of the crime." Doc. 72 at 30. Dr. Ash's testimony "provided more . . . scientific knowledge about . . . how Petitioner's executive functioning was less than 'one would expect from the normal person of his age at that time.'" *Id.* at 29. Dr. Garbarino's testimony was "grounded . . . in scientific research more so than Dr. Weilenman." *Id.* at 30.

*Ala. Dep't of Corr.*, 792 F. App'x 817, 827 (11th Cir. 2018) (emphasis added). Though Dr. Weilenman admittedly presented a social history, "what was lacking was an organizing higher-order concept to . . . highlight and make sense out of the significance of those facts." Doc. 13-21 at 1411:17-1413:7; *see also id.* at 1427:14–1429:1; Doc. 65 at 99-101. Dr. Weilenman did not testify to Mr. Stinski's specific neurological deficits, the connection between adolescent impulsivity and culpability, the connection between adolescent peer pressure and culpability, and the connection trauma and culpability. Doc. 13-17 at 575:7–576:9; Doc. 65 at 100. Thus, discounting otherwise compelling mitigating evidence presented by Drs. James, Ash, and Garbarino in the Court's prejudice determination was a manifest error of law and fact.

The highly aggravating circumstances of the crime, merely highlight trial counsels' dubious decision to put the least experienced attorney on their team in charge of the penalty phase of Mr. Stinski's case and Mr. Sparger's decision to retain only Dr. Weilenman against her and Ms. Davis's advice, despite foreknowledge that the penalty phase would be critical. Mr. Sparger's deficiency in this matter prejudiced Mr. Stinski's case during the most important stage of his case.

## II. THE COURT'S DENIAL OF A CERTIFICATE OF APPEALABILITY IS BASED ON MANIFEST ERRORS OF LAW

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the petitioner to establish that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner is not required "to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." *Miller-El v. Cockrell*, 537 U.S. 322, 328 (2003). Rather, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has

been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338; *see also Buck v. Davis*, 137 S. Ct. 759, 774 (2017) ("That a prisoner has failed to make the ultimate showing that his claim is meritorious does not logically mean he failed to make a preliminary showing that his claim was debatable."); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) ("In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate . . . .").

Thus, a petitioner is entitled to a certificate of appealability where the district court decision on a constitutional issue raised by petitioner conflicts with decisions of other courts. *See Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (holding that Court of Appeals erred in denying a certificate of probable cause where "at least two Courts of Appeals have presumed prejudice in this situation" contrary to the district court ruling); *Busby v. Davis*, 677 F. App'x 884, 890 (5th Cir. 2017) (granting a certificate of appealability where "there is a split among the Circuits as to" the constitutional issue raised by petitioner); *Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110, 115 (3d Cir. 2015) ( "the Sixth Circuit's decision . . . —which conflicts with the District Court's decision in this case—demonstrates that the issue Wilson presents is 'debatable among jurists of reason'" (quoting *Lozada*, 498 U.S. at 432)); *Lambright v. Stewart*, 220 F.3d 1022, 1027–28 (9th Cir. 2000) ("the fact that another circuit opposes our view satisfies the standard for obtaining a COA").

### A. The Court Should Alter or Amend the Judgment to Grant Mr. Stinski a Certificate of Appealability on His Ineffective Assistance Claim

In *Lopez* and *Workman*, the Ninth and Tenth Circuits, respectively, granted habeas relief under similar circumstances. *Lopez*, 845 F. App'x at 554 (affirming habeas relief, in part, because counsel "fail[ed] to introduce readily expert evidence opining that [defendant] could be capable of rehabilitation and [failed to] draw[] the key causal connections he asked the jury to find");

*Workman*, 689 F.3d at 1204 (reversing denial of habeas relief on ineffective assistance of counsel grounds even though counsel presented some mental health evidence during the penalty phase, among other reasons, because counsel "made little effort to connect Dr. Murphy's diagnosis to the circumstances of the crime" and "[t]he importance of counsel's role in this regard cannot be overstated"). Considering these decisions, it is thus at least debatable whether Mr. Stinski's ineffective assistance of counsel claim is meritorious.

The Court in its Order applied 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1) to require that Mr. Stinski prove that the state court's decision was based on an unreasonable determination of the facts based on the state court record and to prove by clear and convincing evidence that the facts found by the state court were incorrect. Doc. 72 at 17. The Third and Ninth Circuits take a different view of how those AEDPA sections apply. *See* Doc. 71 at 11–12 (discussing *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), and *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004), which reflect that "§ 2254(d)(2) . . . does not require the petitioner to prove that factual findings are unreasonable by clear and convincing evidence" and that "§ 2254(e)(1) . . . applies to independent fact-finding by federal courts where that is necessary because the federal court has considered evidence outside the state habeas court record"). The Supreme Court has granted certiorari to resolve the proper application of those AEDPA sections twice, but on both occasions failed to resolve the issue. *See Wood v. Allen*, 558 U.S. 290, 300 (2010) ("Although we granted certiorari to resolve the question of how §§ 2254(d)(2) and (e)(1) fit together, we find once more that we need not reach this question . . . ."); *Miller-El*, 537 U.S. at 341 ("It was incorrect for the Court of Appeals, when looking at the merits, to merge the independent requirements of §§ 2254(d)(2) and (e)(1)" because "[t]he clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather

11

than decisions."). Given the divergence of approaches in federal appeals courts and the lack of resolution from the Supreme Court, the correct application of these AEDPA provisions is debatable.

Mr. Stinski is thus entitled to a certificate of appealability on his ineffective assistance of counsel claim and the Court should alter its judgment to grant him one.

**B.      The Court Should Alter or Amend the Judgment to Grant Mr. Stinski a Certificate of Appealability on His Eighth Amendment Claim**

The Court in its Order determined that a rule applying *Roper v. Simmons*, 543 U.S. 551 (2005), to prohibit the execution of defendants who are the functional equivalent of juveniles would be retroactive on collateral review under *Teague v. Lane*, 489 U.S. 288 (1989). Doc. 72 at 70 ("Such an extension would create a 'new rule' for purposes of the *Teague* analysis in that it has not been previously dictated by federal law and would extend *Roper*'s ruling to a novel set of facts"). But the Court stated that the "analysis does not end there," because "the Court must determine whether the AEDPA's standard of review under 28 U.S.C. § 2254(d)(1) applies to new rules of constitutional law that fall under one of the exceptions to *Teague*." *Id.* The Court concluded that AEDPA barred federal review because at the time of the state habeas court decision, there was no clearly established federal law prohibiting Mr. Stinski's execution. *See id.* at 72–78. But, as the Court acknowledged, "neither the Supreme Court nor the Eleventh Circuit have directly answered this question." *Id.* at 71. As the answer to the question of the application of AEDPA to claims that the Eighth and Fourteenth Amendments bar the execution of defendants who are the functional equivalent of juveniles is at least debatable, Mr. Stinski is entitled to, and the Court should alter its judgment to grant him, a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court should alter or amend its Final Judgment denying Mr.

Stinski habeas corpus relief on his claim for ineffective assistance of counsel, and, alternatively,

should alter its judgment to grant Mr. Stinski a certificate of appealability on each of his claims.


Respectfully submitted,

*/s/ Richard K. Hines, V*
Richard K. Hines, V
Georgia Bar No. 356300
Lucas A. Westby
Georgia Bar No. 594008
NELSON MULLINS RILEY & SCARBOROUGH
SCARBOROUGH
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30603
Tel:  404.322.6272
Fax:  404.322.6050
richardhines@nelsonmullins.com
lucas.westby@nelsonmullins.com

Lori B. Leskin (*pro hac vice*)
Jeffrey A. Fuisz (*pro hac vice*)
Sheila S. Boston (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel:  212.836.8000
Fax:  212.836.8589
lori.leskin@arnoldporter.com
jeffrey.fuisz@arnoldporter.com
sheila.boston@arnoldporter.com

*Attorneys for Petitioner Darryl Scott Stinski*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing has been filed on January 14, 2022 using the

Court's CM/ECF filing system which will send notice of electronic filing to all parties registered

with the system.


/s/ *Richard K. Hines, V*
Richard K. Hines, V
Georgia Bar No. 356300

14